IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

J & J SPORTS PRODUCTIONS, INC.                                              PLAINTIFF

v.                                      Case No. 5:15-CV-05208

MARCELA J. LARA a/k/a MARCELA J. ALVAREZ,
ANTONIO LARA and LUIS ALVAREZ, each
individually and d/b/a/ EL FAR WEST DISCOTHEQUE;
and EL CLUB SONIDERO, INC., an unknown business
entity d/b/a EL FAR WEST DISCOTHEQUE.                                       DEFENDANTS

## OPINION AND ORDER

Currently before the Court is Plaintiff's motion for summary judgment (Doc. 21) and brief in support of its motion (Doc. 22). Defendants Luis Alvarez, Antonio Lara, and Marcela J. Lara filed a response in opposition to the motion for summary judgment on September 19, 2016 (Doc. 24). The Plaintiff filed a reply on September 26, 2016 (Doc. 25). Defendants Marcela J. Lara, Antonio Lara, and Luis Alvarez previously filed an answer (Doc. 8) and motion to dismiss (Doc. 9) on December 14, 2015. Defendants' motion to dismiss is still pending. Defendant El Club Sonidero, Inc., d/b/a El Far West Discotheque ("the Club") did not appear and the clerk entered a notice of default on January 11, 2016 (Doc. 15).

Plaintiff J & J Sports Productions, Inc. brought this action against the aforementioned individuals—both as individuals and d/b/a the Club—and against the Club itself, for knowingly and willfully violating the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605, and for engaging in conversion. The event giving rise to this action occurred on September 14, 2013, the day when Plaintiff alleges that the Defendants unlawfully intercepted and exhibited the "The One": Floyd Mayweather, Jr. vs. Saul Alvarez, WBC Light Middleweight Championship Fight Program ("the Program").

1

When a party moves for summary judgment, it must establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66–67 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Only facts "that might affect the outcome of the suit under the governing law" need be considered. *Anderson*, 477 U.S. at 248. "[T]he non-movant must make a sufficient showing on every essential element of its claim on which it bears the burden of proof." *P.H. v. Sch. Dist. of Kan. City, Mo.*, 265 F.3d 653, 658 (8th Cir. 2001) (quotation omitted). Facts asserted by the nonmoving party "must be properly supported by the record," in which case those "facts and the inferences to be drawn from them [are viewed] in the light most favorable to the nonmoving party." *Id*. at 656–57.

The Court finds that default judgment should be entered against the Club because there has been no appearance entered and no defense presented on its behalf. To the extent that any of the pro se filings before this Court purport to represent the Club, those pro se filers cannot respond on behalf of a corporation that can only be represented by licensed counsel. *Rowland v. California Men's Colony*, 506 U.S. 194 (1993). Therefore, default judgment will be entered against Defendant the Club.

The Court finds that Defendants' motion to dismiss (Doc. 9) should be granted with regard to Marcela J. Lara and denied with regard to Luis Alvarez and Antonio Lara. In support of the motion to dismiss, the Defendants present a United States Bankruptcy Court order titled "Discharge of Debtor," which indicates that as of November 6, 2015, Marcela J. Lara was "granted a discharge under section 727 of title 11, United States Code (the Bankruptcy Code)." This order from the Bankruptcy Court is sufficient proof to dismiss Defendant Marcela J. Lara from this

action. From this motion however, it does not appear that Defendants Luis Alvarez and Antonio Lara have filed bankruptcy, or should be excused by Marcela J. Lara's filing. Based on the lack of evidence and legal argument put forth in support of this motion to dismiss, the Court finds no reason why Luis Alvarez and Antonio Lara should be dismissed.

Upon reviewing all of the evidence put forth by both parties following Plaintiff's motion for summary judgment (Doc. 21), the Court denies Plaintiff's motion for summary judgment and instead finds summary judgment is proper in favor of Defendants Antonio Lara and Luis Alvarez. Because default judgment will be entered against the Club, to the extent that Plaintiff's motion for summary judgment was asserted against the Club it will be denied as moot. Plaintiff's complaint alleged that Luis Alvarez and Antonio Lara "specifically directed the employees of [the Club] to unlawfully intercept and broadcast [the program]… or that the actions of the employees of [the Club] are directly imputable to Defendants…by virtue of their acknowledged responsibility for the actions of [the Club]." (Doc. 1, ¶ 19). Further, Plaintiff points to an "obvious and direct financial interest in the activities of [the Club]." (*Id.*, ¶ 20). The Plaintiff further alleged that the Defendants had an opportunity to supervise the activities at the Club.

First is the issue of whether Antonio Lara and Luis Alvarez have directly engaged in illegal conduct that would rise to the level of a violation of 47 U.S.C. §§ 553 and 605 or that would constitute conversion. Although the complaint alleged that Antonio Lara and Luis Alvarez "specifically directed the employees of the Club to unlawfully intercept and broadcast [the Program]," there is no evidence in the record to support the allegation that Antonio Lara and Luis Alvarez supervised or directed this illegal activity. The affidavit of the private investigator who witnessed the broadcasting of the Program at the Club does not identify any person by name. (Doc. 21, Ex. 1). There is one close-up photograph of an individual attached to this Exhibit, but the Plaintiff does not rely on it or even identify who is in the photograph. The private investigator's report lists six license plates of cars that were present at the Club, but no evidence is presented that links any of those license plates to Antonio Lara or Luis Alvarez. Presence at the Club when the

private investigator was there would not be dispositive of course, but this is merely one way that Plaintiff could have shown personal involvement but failed to do so. Even taking Plaintiff's statement of material facts in support of its motion for summary judgment (Doc. 23) and assuming for a moment that all of those facts are admitted, this still does not present any factual evidence supporting a finding of liability against Antonio Lara or Luis Alvarez. In light of the absence of evidence against the direct liability of Antonio Lara and Luis Alvarez, the Plaintiff is asking this Court to hold these individuals liable for the conduct of a corporation.

"Arkansas courts have stated that the doctrine of piercing the corporate veil is founded in equity and is applied when the facts warrant its application to prevent injustice." *Epps v. Stewart Info. Services Corp.*, 327 F.3d 642, 647 (8th Cir. 2003) (citing *Humphries v. Bray*, 611 S.W.2d 791, 793 (Ark. 1981). In Arkansas, "[p]iercing the fiction of a corporate entity should be applied with great caution." *Epps*, 327 F.3d at 649 (citing *Banks v. Jones*, 390 S.W.2d 108, 111 (Ark. 1965). "It is only when the privilege of transacting business in corporate form has been illegally abused to the injury of a third person that the corporate entities should be disregarded." *Epps*, 327 F.3d at 649 (citing *Rounds & Porter Lumber Co. v. Burns*, 225 S.W.2d 1, 2 (Ark. 1949)).

Plaintiff states that "to the extent the Defendants may believe that Arkansas corporate veil law applies herein, that is in incorrect." (Doc. 25, p. 4). In support of this statement, Plaintiff cites to federal district court cases from Florida and Louisiana. *Joe Hand Promotions, Inc. v. Hart*, 2012 WL 1289731, *3 (S.D. Fla. April 16, 2012); *Zuffa, LLC v. Trappey*, 2012 WL 1014690, *4, n.6 (W.D. La. March 22, 2012). Plaintiff cites additional authority from courts all over the country. (Doc. 22, pp. 7-9). After reviewing these cases, this Court does not find them helpful on the issue of Arkansas corporate veil law. Moreover, the corporate facade is disregarded when the form has been illegally abused. *Black and White, Inc. v. Love*, 367 S.W.2d 427 (Ark. 1963). But Plaintiff has not put forth any evidence, or even allegations, suggesting that the Defendants have abused the corporate form. Furthermore, Plaintiff has not presented any facts here to suggest that piercing the corporate veil is necessary to prevent injustice. Therefore, this Court declines to pierce the

corporate veil and does not hold Antonio Lara and Luis Alvarez personally liable for the actions of the corporation whose conduct gave rise to this lawsuit.

Since default judgment will be entered against the Club, the Court must determine the appropriate amount of damages to award. For the violation of § 605, the Court awards $1,000 in statutory damages to Plaintiff. A section of the Plaintiff's brief in support of its motion for summary judgment adequately explains the reason for these damages:

> A party aggrieved under section 605 may, at its discretion, recover either actual or statutory damages. 47 U.S.C. § 605(e)(3)(C). Plaintiff elects to recover statutory damages. Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II). The amount of statutory damages to which Plaintiff is entitled for each violation of this section shall be not less than $1,000.00 nor more than $10,000.00. Id.

(Doc. 22, p. 9). The Court defers to Plaintiff's election to collect statutory damages, and finds that $1,000 is an appropriate amount to award in this case. Plaintiff has further requested $30,000 in enhanced statutory damages. (Doc. 22, p. 9). In calculating damages, the Plaintiff argues that "particularly important to the issue of enhanced statutory damages, the establishment required a $5.00 cover charge for entry." (Doc. 22, p. 12). In support of this argument, the Plaintiff cites to the report of the private investigator. That report reveals that at its peak, attendance reached 12 persons in the Club on the night in question. This evidence does not support a claim for enhanced damages. The Court finds that $1,000 in statutory damages is sufficient for the violation, and in addition to the conversion damages discussed below, this award will effectively deter both this particular defendant and other similarly situated defendants in the future.

For the conversion, the Court awards $2,200 in compensatory damages to Plaintiff. "[T]he proper measure of damages [for a conversion claim] is the fair market value of the property at the time and place of conversion." *Durham v. Smith*, 374 S.W.3d 799, 805 (Ark. Ct. App. 2010). However, "the circumstances of a case may require a different standard, including a measure of the expenses incurred as a result of the conversion." *McQuillan v. Mercedes-Benz Credit Corp.*,

5

961 S.W.2d 729, 733 (Ark. 1998) (citing *First Nat'l Bank of Brinkley, Ark. v. Frey*, 668 S.W.2d 533, 535 (Ark. 1984)). Relying on the affidavit of Joseph M. Gagliardi, the President of J & J Sports, Plaintiff asserts that the fair market value of the Program is $6,200 because that is the "commercial sublicense fee" for the Club. (Doc. 21, Ex. 1, p. 3). That affidavit references the "rate card" and states that this is "based on the capacity of the establishment." (*Id.* citing Doc. 21, Ex. 2, p. 17). A review of that rate card shows that there is "A NON-REFUNDABLE MINIMUM GUARANTEE OF $2,200 Plus $20.00 Per Person Above 100." (*Id.*). Presumably the higher $6,200 figure comes from the rate card where it states that for a minimum seating of 200 to 300 people, the rate is $6,200. (*Id.*). The report of the private investigator revealed that the capacity of the Club was 287, but that the actual attendance never reached more than 12 people. (Doc. 21, Ex. 1).

While the President of J & J Productions submitted one interpretation of the rate card in his affidavit, a plain reading of the rate card would also support the conclusion that the Club could have given a non-refundable minimum guarantee of $2,200 plus $20.00 per person above 100. Under that reading of the rate card, with a total attendance of 12 persons, $2,200 would be the total amount owed by the Club. Either because an ambiguity in the rate card should be construed against its drafter, or because $2,200 is closer to a reasonable rate for 12 people to watch the Program than $6,200, the Court concludes that $2,200 will be the fair market value of the Program showed at the Club. The Court finds the fair market value of the converted property to be the appropriate means to determine compensatory damages for conversion in this case. Under this measure, the Plaintiff is entitled to, and will be awarded, $2,200 in compensatory damages, which represents the fair market value of a commercial license for the Program at the time of the conduct alleged.

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (Doc. 9) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED insofar as claims

against Marcela J. Lara are DISMISSED. The motion is otherwise DENIED.

IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment (Doc. 21) is DENIED, and instead Plaintiff's claims against Defendants Luis Alvarez and Antonio Lara are DISMISSED.

IT IS FURTHER ORDERED that judgment is entered in favor of Plaintiff against Defendant El Club Sonidero, Inc. d/b/a El Far West Discotheque, with El Club Sonidero to pay Plaintiff $3,200 in damages. This judgment shall bear interest at the prevailing legal rate of 0.60% per annum from the date of entry of this order until paid. A separate order of judgment will issue contemporaneously with this order.

IT IS SO ORDERED this 29th day of September 2016.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE